## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| **DOUGLAS BURKA, MD,** ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| v. ) | |
| ) | |
| **GARRISON PROPERTY AND** ) | CIVIL No. 2:20-cv-172-DBH |
| **CASUALTY INSURANCE COMPANY** ) | |
| AND **UNITED SERVICES** ) | |
| **AUTOMOBILE ASSOCIATION** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| DEFENDANTS ) | |

## DECISION AND ORDER ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT

The central issue on these cross-motions for summary judgment is
whether the United Services Automobile Association Insurance Company's
(USAA's) Maine Renters Protection Policy obligated it to defend its insured Dr.
Douglas Burka (Burka) against two lawsuits. Burka's former spouse Allison
Cayne (Cayne) sued Burka in Maine and Maryland charging that while they were
married he improperly accessed her medical records and otherwise treated her
shamefully. Her parents joined the Maryland lawsuit charging improper access
to their medical records. Burka is not seeking indemnification for the claims but
rather his legal fees in defending against them until they were finally resolved.
After oral argument on December 8, 2020, I conclude that USAA had a duty to
defend but that I am unable to determine on this record whether that duty
terminated as to the Maine lawsuit earlier than final resolution of the underlying

1

Maine and Maryland lawsuits.  I decline to rule on this record what discovery is appropriate as a result of my ruling; I leave that to the Magistrate Judge's discretion in responding to counsel's specific proposals.

## PROCEDURAL HISTORY

Burka filed this duty-to-defend lawsuit against USAA in the Maine Superior Court for breach of his insurance contract, late payment, and unfair claims settlement practices.  USAA removed the case to this Court based upon diversity of citizenship.  The Magistrate Judge then issued a standard Scheduling Order that set deadlines for discovery and motion practice.  (ECF No. 8).  But the parties filed a joint proposed amendment to the Scheduling Order.  (ECF No. 19). They said that before starting discovery "in earnest," they first wanted a judicial resolution of "Phase One."  I quote their agreement because it frames the controversy I am deciding:

> The legal issue to be addressed in Phase One is whether the defendants owed a duty to defend the plaintiff in one or both of the two lawsuits ("the underlying litigation") brought against him; and, if so, what does that duty entail when the underlying litigation is complete.  Phase One also involves whether the defendant is estopped from denying the duty to defend, or has waived its ability to deny the duty to defend, when it communicated acceptance but only after completion of the underlying litigation.  Finally, in the event that a duty to defend was owed, must the plaintiff prove the relatedness and reasonableness of the legal expenses incurred during the underlying litigation such that he must produce discovery in support of same.

(ECF No. 19).  They proposed therefore to proceed on Phase One by cross-motions for summary judgment and to defer a scheduling order for discovery

until after the Court's decision on the cross-motions.  Id.  The Magistrate Judge adopted their joint proposal.  (ECF No. 20).[1]

### UNDISPUTED SUMMARY JUDGMENT RECORD

The parties agree that only USAA's Maine Renters Protection Policy is pertinent.  Defs.' Statement of Material Facts (SMF) ¶ 4 (ECF No. 29-2); Pl.'s Opposing SMF ¶ 4 (ECF No. 34).  The policy says it applies to loss that occurs during the policy period, July 2, 2014, to July 2, 2015.  Me. Renters Policy at Page ID #s 170, 196 (ECF No. 27-5).  USAA agrees that events that are the subject of the underlying litigation occurred during that calendar period,[2] but denies that any of them are covered by the policy.  At the last minute and after the initial exchange of the cross-motions, USAA also seems to have challenged whether the underlying litigation has settled, and asserts that it cancelled the Renters policy on May 1, 2015.  I reject those challenges as either too late or unsupported or both, or contrary to the agreement the parties presented to the Magistrate Judge that led to the procedural structure of this lawsuit—cross-motions for summary judgment in advance of serious discovery.  I treat July 2, 2014, to July 2, 2015, as the policy period[3] and proceed on the premise that the underlying litigation

---

[1] The parties characterize the procedural posture as cross-motions for summary judgment.  In reality, the plaintiff's motion at this time is for partial summary judgment, i.e., only on Count 1 and only for liability.

[2] "During the relevant time period, Burka was the named insured under . . . a Renters Policy issued to him in Maine by USAA."  Defs.' Mem. of Law at 2 (ECF No. 29-1).

[3] In their initial cross-motions for summary judgment and statements of material fact, the parties agreed that the policy period was July 2, 2014, to July 2, 2015.  See Pl.'s SMF ¶ 17 (ECF No. 27-1); Defs.' SMF ¶ 4 (stating that Burka was insured "[d]uring the relevant time period" and that the Maine Renters Policy period was "7/02/14 to 7/02/15") (ECF No. 29-2); Pl.'s Mot. for Summ. J. at 4 (ECF No. 27); Defs.' Mem. of Law at 16 ("The Maine Renters Policy was in effect from July 2, 2014 to July 2, 2015.").  But then in its opposing statement of material facts, USAA said that it cancelled the policy on May 1, 2015, cutting short the applicable period.  See Defs.' Opposing SMF ¶ 17, Additional Facts ¶ 1 (ECF No. 36); Defs.' Obj. ¶¶ 2, 7, 11 (ECF No. 35).  It
*(continued next page)*

against Burka has resolved.[4]  Any other treatment would make a mockery of this Court's orders that were based upon the parties' agreement and would waste judicial and advocate resources.

### The Maine Lawsuit

In December 2015, Cayne filed a Complaint against Burka in the Maine Superior Court.  See Me. Compl. (ECF No. 29-3).  Cayne alleged that Burka accessed her medical records without her knowledge or consent and accessed her personal email and social media accounts.  Id. ¶¶ 6, 7, 8.  The Complaint contained four claims:  Invasion of Privacy, Unlawful Disclosure of Confidential Health Care Information, Intentional Infliction of Emotional Distress, and violation of the California Comprehensive Computer Data Access and Fraud Act. Id.  In March 2016, the Superior Court dismissed the Invasion of Privacy and California Act claims.  Defs.' Opposing SMF, Additional Facts ¶ 3 (ECF No. 36);

---

attached to its objection a purported cancellation notice from USAA to Burka.  Ex. Notice of Cancellation (ECF No. 35-1).  When I asked at oral argument the reason for the late change in position, USAA's lawyer responded that she discovered the cancellation "when going again through the extensive USAA file and discovered that it was in fact canceled."  I find that USAA has waived its cancellation argument for several reasons: first, the purported cancellation notice was simply attached, without any evidentiary foundation, to USAA's objection to Burka's motion for summary judgment, so it is not admissible in evidence on summary judgment, see Fed. R. Civ. P. 56(c)(2); second, before the parties filed their cross-motions, USAA represented to the Magistrate Judge that the duty-to-defend ruling could occur without discovery and there was therefore no reason for Burka to pursue the cancellation issue or documents that might support or contradict cancellation; and third, USAA admitted the year-long policy period in its initial brief and statement of facts, leaving Burka no reason to address it earlier.
[4] USAA says that it "cannot admit to [the] existence or [the] terms" of the settlement because Burka has not produced it.  Defs.' Opposing SMF ¶ 28.  But it agreed to the Magistrate Judge's procedural order structuring the summary judgment process, (ECF Nos. 19, 20), referring twice to the litigation as complete.  It also refers to a letter it sent Burka on September 18, 2019, which it says was "long after the two lawsuits were settled."  Defs.' Mem. of Law at 3.  (Its Statement of Material Facts says that the litigation "ultimately resolved with trial," Defs.' SMF ¶ 19, but that appears to be a typographical error.)  I therefore treat the underlying litigation as complete for purposes of the cross-motions for summary judgment, regardless of the "terms" of any resolution. USAA has not produced anything to suggest the underlying litigation is still alive.  I leave to the Magistrate Judge whether there is a dispute over the settlement date and its terms that requires discovery for the issues that remain.

4

Pl.'s Reply to Defs.' Additional Facts ¶ 3 (ECF No. 39); see Burka v. Burka, No. CV-16-20, 2016 Me. Super. LEXIS 64 (Mar. 29, 2016).

In May 2016, Cayne filed an Amended Complaint in the Superior Court. The Amended Complaint did not include the California Act claim, but it reasserted the claim for Invasion of Privacy along with the claims for Unlawful Disclosure of Confidential Health Care Information and Intentional Infliction of Emotional Distress.  See Me. First Am. Compl. (ECF No. 29-4).[5]  The Superior Court dismissed the Invasion of Privacy claim again on September 22, 2016. Defs.' Opposing SMF, Additional Facts ¶ 4; Pl.'s Reply to Defs.' Additional Facts ¶ 4.[6]  On December 14, 2016, the parties in the Maine litigation stipulated to a dismissal of the Intentional Infliction of Emotional Distress claim with prejudice. Defs.' Opposing SMF, Additional Facts ¶ 5; Pl.'s Reply to Defs.' Additional Facts ¶ 5.  The Superior Court later dismissed what remained of the case.  On June 7, 2017, Cayne then appealed that final judgment.[7]

### The Maryland Lawsuit

In February 2016, Cayne along with her parents filed a Complaint in Maryland Circuit Court against Burka and his father, also a doctor, focused on improperly accessing medical records.  They asserted four claims: Violation Under Health-General § 4-309(f) (a Maryland statute), Invasion of Privacy, Civil

---

[5] In addition to the allegations in the initial Complaint, the Amended Complaint alleged that Burka installed security cameras in their home to monitor Cayne and made phone calls harassing her and her family.  Me. First Am. Compl. ¶¶ 13, 16.

[6] The parties do not provide a copy of this decision but agree on the dismissal's existence and date.

[7] I follow my colleague Judge Singal in taking judicial notice of the filing of an appeal in the underlying Maine action.  Med. Mut. Ins. Co. of Me. v. Burka, No. 2:16-cv-462-GZS, 2017 WL 3725980, at *1 n.1 (D. Me. Aug. 29, 2017).

Conspiracy, and Intentional Infliction of Emotional Distress.  Md. Compl. (ECF No. 29-5).  A year later, the Caynes filed an Amended Complaint that dropped the Intentional Infliction of Emotional Distress claim.  Md. Am. Compl. (ECF No. 29-6).  The parties have not mentioned any further developments in the Maryland litigation between the filing of the Amended Complaint and resolution of the claims.

### *The USAA Maine Renters Policy*

USAA issued a Maine Renters Protection Policy naming Burka as the sole named insured.[8]  The policy covers "bodily injury or property damage caused by an occurrence to which this coverage applies."  Me. Renters Policy at Page ID # 187.  It defines "occurrence" as "an accident . . . which results, during the policy period, in . . . bodily injury . . . or . . . property damage."  Id.  It does not define "accident."  It defines "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results."  Id. at Page ID # 194.  It says that coverage does not extend to "bodily injury or property damage . . . which is expected or intended by the insured."  Id. at Page ID # 208.

## ANALYSIS

The parties dispute whether USAA had a duty to defend Burka under the policy in both the Maine and Maryland lawsuits, and, if so, whether and when that duty ended.[9]  Burka contends that USAA had a duty to defend that

---

[8] I quote the policy at greater length in Appendix A.

[9] Burka argues that USAA is bound by its earlier recognition, after the underlying lawsuits had resolved, that it did have a duty to defend.  USAA disagrees, saying its brief belief that it had a duty to defend, as expressed in its September 2019 letter, was based on Burka's "failure to inform" it of the counts that were dismissed.  Defs.' Mem. of Law at 23.  Because I find a duty to defend from the outset, I do not resolve the parties' disagreement over waiver and estoppel.  I do
*(continued next page)*

continued until the underlying litigation was resolved in 2017.  USAA counters
that it did not have a duty to defend either lawsuit and that, even if it did, it was
able to withdraw its defense in the Maine litigation once the potentially covered
claims were dismissed.  If USAA did breach a duty to defend, the parties also
contest the extent to which USAA may seek discovery to challenge the
reasonableness and relatedness of the legal fees Burka incurred in defending
against the underlying lawsuits.

***Duty to Defend***

The parties agree that Maine law applies.  Maine's duty to defend is broad
but not unlimited.  In determining an insurer's duty to defend, the court
compares two documents: the insurance policy and the underlying complaint(s)
against the insured.  Harlor v. Amica Mut. Ins. Co., 2016 ME 161, ¶ 8, 150 A.3d
793.  "An insurer has a duty to defend an insured when the complaint, read
broadly in conjunction with the policy, reveals the existence of any legal or
factual basis that could potentially be developed at trial and result in an award
of damages covered by the terms of the policy."  Id.  Mere speculation will not
trigger a duty to defend, and no duty exists where "the allegations of the
complaint fall entirely within a policy exclusion."  Barnie's Bar & Grill, Inc. v.
U.S. Liab. Ins. Co., 2016 ME 181, ¶ 6, 152 A.3d 613 (quotation marks omitted).

---

note that even if Burka is correct that waiver does not require detrimental reliance like
promissory estoppel, and if USAA in fact waived its ability to deny a duty to defend when it
accepted a defense in its September 2019 letter after the underlying litigation had been resolved,
that waiver was not necessarily enduring.  The Restatement says that, once communicated, a
waiver is binding on the waiving party unless effectively retracted.  Restatement of Liab. Ins. § 5
cmt. h (Am. Law Inst. 2019).  Where there has been detrimental reliance by the other party, a
waiver cannot be retracted; in that situation, waiver and estoppel are indistinguishable.  Id.  I
see no detrimental reliance here where the alleged waiver occurred after the underlying lawsuit
was over, but I make no decision on whether USAA permissibly retracted any waiver.

But the Maine Law Court has "consistently applied a broad construction of the underlying complaint in favor of the insured and a strict construction of policy exclusions and ambiguities against the insurer." Id. A duty to defend may exist even for a complaint that could not survive a motion to dismiss. Mitchell v. Allstate Ins. Co., 2011 ME 133, ¶ 10, 36 A.3d 876. Finally, "an insurer has a duty to defend if *any* cause of action alleged in a complaint could fall within the policy's liability coverage." Id. ¶ 21 (emphasis added).[10]

USAA argues that none of the allegations in the two lawsuits falls within the policy's coverage and, even if any allegations are covered, one or more exclusions relieve it of a duty to defend.

### Coverage

The policy defines an "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . bodily injury . . . or . . . property damage," and it excludes "bodily injury or property damage . . . which is expected or intended by the insured." Me. Renters Policy at Page ID ## 187, 208 (an "intentional acts" exclusion). Although coverage and exclusion are two separate issues, I find it convenient to deal with coverage and the "expected or intended" exclusion together.

I deal first with the Maine lawsuit. On the invasion of privacy claim, the lawsuit says that Burka acted intentionally, with malice and ill will. Me. Compl.

---

[10] USAA has not argued that this principle is inapplicable under the Law Court's earlier more modest statement that "in some circumstances the duty of an insurance company to defend one count in a lawsuit imposes a duty to defend all counts." Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1354 (Me. 1996). In Gibson there was such a duty where all the claims arose "from common issues of fact," also the case here.

¶¶ 10-11.[11]  On damages for invasion of privacy, the Complaint says "[b]y reason of Defendant's invasion of Plaintiff's privacy, Plaintiff suffered damage or loss." Id. ¶ 12.[12]  The Amended Complaint says that all Burka's actions, including invasion of privacy, caused Cayne "extreme emotional distress."  Me. First Am. Compl. ¶ 1.

USAA concedes that emotional distress triggers a duty to defend for "bodily injury" where the claim is caused by an "occurrence" and is not excluded by a policy provision.  Defs.' Mem. of Law at 9 (ECF No. 29-1); see Vigna v. Allstate Ins. Co., 686 A.2d 598, 600 (Me. 1996).  USAA argues, however, that "[t]here is nothing accidental" about what Burka is alleged to have done, Defs.' Mem. of Law at 10, and it is therefore not a covered "occurrence."  The parties agree that where "accident" is not defined, as in this policy, the Law Court has stated that "the accidental nature of an event for purposes of a standard liability insurance contract does not derive from the voluntariness of the *act*, but rather from the unintentional nature of the *consequences flowing from* the act."  Me. Mut. Fire Ins. Co. v. Gervais, 1998 ME 197, ¶ 10, 715 A.2d 938 (cleaned up) (emphasis added); accord Me. State Acad. of Hair Design, Inc. v. Commercial Union Ins. Co., 1997 ME 188, ¶ 9, 699 A.2d 1153; see Defs.' Mem. of Law at 10; Pl.'s Mot. for Summ. J. at 15 (ECF No. 27).

In Burns v. Middlesex Insurance Company, 558 A.2d 701, 702-03 (Me. 1989), the Law Court held that invasion of privacy "may be characterized as [an]

---

[11] See also Me. First Am. Compl. ¶¶ 24-25.
[12] See also Me. First Am. Compl. ¶ 26 (stating similarly: "By reason of Defendant's invasion of Plaintiff's privacy in Maine and while she resided in Maine, Plaintiff suffered damages and harm.").

intentional tort[]" (here, the Maine lawsuit alleges intent, malice, and ill will), but for recovery the tort does not require that the tortfeasor "'subjectively wanted' or 'subjectively foresaw' bodily injury as the 'practically certain' result of [his] conduct." The underlying Maine lawsuit here does not assert that Burka intended the damages to Cayne that flowed from his alleged invasion of her privacy. As to that claim, it says only that Cayne suffered damages "by reason of" the invasion of privacy. It does not assert (and Cayne would not need to have proved) that Burka intended or subjectively foresaw the injury that resulted from his invasion of her privacy.

Thus, the invasion of privacy claim is a covered occurrence not subject to the "expected or intended" exclusion, and I conclude that USAA therefore had a duty to defend the Maine Complaint.

The Maryland lawsuit likewise has an invasion of privacy claim. Maryland's invasion of privacy tort for intrusion upon seclusion (the subset of invasion of privacy applicable to the underlying litigation here) appears to be similar to Maine's, see Bailer v. Erie Ins. Exch., 687 A.2d 1375, 1380-81 (Md. 1997) (intentional intrusion upon solitude or seclusion of another or private affairs, which would be highly offensive to a reasonable person; following the Restatement (Second) of Torts § 652B); Knight v. Penobscot Bay Med. Ctr., 420 A.2d 915, 917 (Me. 1980) (following Restatement (Second) of Torts § 652B). The Maryland privacy claim alleges "evil motive, ill will, and an intent to injure Plaintiffs," Md. Compl. ¶ 37, and it also asserts that the conduct constituted criminal violations, id. ¶ 34. USAA has provided no Maryland authority to suggest that to recover the requested damages for invasion of privacy, however,

a plaintiff must prove either criminal conduct or that the tortfeasor intended the bodily injury that resulted.[13]

Alternatively, the Maryland lawsuit also has a claim for damages under a Maryland statute concerning confidentiality of patient medical records.  Md. Compl. ¶¶ 29-32; see Md. Health Gen. §4-309(f).  That statute provides that one who knowingly violates it is liable, but it does not require that a defendant intend to harm the patient.  The Maryland Complaint charges that Burka and his father "knowingly disclos[ed] [the Caynes'] medical records without authorization or statutory basis . . . . under false pretenses and through deception," and "caused  . . . actual damages by obtaining [the Caynes'] medical records."  ¶¶ 30-32.  Nowhere does it charge intent to cause damage.  As developed at a Maryland trial, the actual damages could be an unintended consequence of Burka's intentional act.[14]

Thus, both the invasion of privacy and statutory confidentiality claims amount to a covered occurrence not subject to the "expected or intended" exclusion, and I conclude that USAA therefore had a duty to defend the Maryland Complaint.

Nevertheless, USAA contends that Burka should be collaterally estopped from asserting that the Maine and Maryland lawsuits allege an accident that is an "occurrence" or from denying that the intentional acts exclusion applies.

---

[13] In Bailer v. Erie Insurance Exchange, the court found a policy exclusion for "personal injury or property damage expected or intended by anyone we protect" to be inconsistent with a policy provision explicitly covering invasion of privacy, and therefore ignored the exclusion.  687 A.2d 1375 (Md. 1997).
[14] Moreover, the Maryland litigation alleges that one of Burka's purposes was "to gain advantage in the pending divorce litigation" between him and Cayne, Md. Compl. ¶ 15, an even stronger basis for concluding that the emotional distress damages need not have been intentional.

Defs.' Obj. at 13-15 (ECF No. 35).  USAA reasons that in the earlier coverage lawsuit that Burka brought against a different insurer, Med. Mut. Ins. Co. of Me. v. Burka (MMIC), 899 F.3d 61 (1st Cir. 2018), aff'g No. 2:16-cv-462-GZS, 2017 WL 1743505 (D. Me. May 3, 2017) and 2017 WL 3725980 (D. Me. Aug. 29, 2017), the Court determined that Burka's motive was to harass and embarrass the Caynes, and that is a factual finding binding here.  Defs.' Obj. at 14.

I do not agree that collateral estoppel applies.  In MMIC, the First Circuit determined that Burka's professional liability insurance policy with MMIC did not create a duty to defend Burka against Cayne's claim of improper access to her medical records.  It said there could be professional liability coverage only if Burka's conduct "occurred in the course of professional services—specifically, healthcare services—provided by Burka to Cayne.  The duty to defend Burka thus requires a relationship of doctor to patient that is emphatically denied by the complaint's allegations . . . ." 899 F.3d at 72.  The First Circuit affirmed the district court's conclusion that the underlying complaint against Burka alleged conduct that did not arise from a doctor-patient relationship but rather conduct that arose from a "spousal relationship."  2017 WL 3725980, at *5.  That was not a factual finding (the appeal arose from summary judgment for the insurer comparing the policy to the underlying complaints), and the conclusion that the allegations did not create a duty to defend under a professional liability policy

does not determine whether they do create such a duty under this Renters policy. There is no collateral estoppel.[15]

### Exclusions

#### Intentional Acts Exclusion

I have already addressed this exclusion under Coverage.

#### Criminal Acts Exclusion

The Renters policy excludes liability coverage for bodily injury "arising out of the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element." Me. Renters Policy at Page ID # 189. It also says that it "does not provide defense to any insured for criminal prosecution or proceedings" nor does it pay for "fines or penalties." Id. at Page ID # 187. USAA contends that these criminal acts exclusions relieve it of a duty to defend because the statutory claims in the two Complaints allege improper access to medical records that could be deemed criminal under Maryland statute and federal HIPAA law. Defs.' Mem. of Law at 13-15.

I have concluded that Burka can establish a duty to defend based on the Maine invasion of privacy claim. Under Gibson and Mitchell, that is enough to create a duty to defend the Maine lawsuit in its entirety. Mitchell, 2011 ME 133, ¶ 21, 36 A.3d 876; Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1354 (Me. 1996). Moreover, whether or not the Maryland invasion of privacy claim requires proof of criminal conduct, the Caynes could recover damages on their statutory claim in the Maryland lawsuit without proving that Burka committed

---

[15] In its brief, USAA agrees that whether there is a duty to defend "is a question of law" that is determined by comparing the policy with the complaint against the insured. Defs.' Mem. of Law at 7-8. That statement is inconsistent with its collateral estoppel argument.

a crime.  For there to be a crime under the Maryland statute, the defendant must act "knowingly and willfully."  Md. Health Gen. § 4-309(d), (e).  For damages, on the other hand, it is necessary only that he act "knowingly."  Id. § 4-309(f).  The Maryland lawsuit does not assert that Burka acted "willfully."  Md. Compl. ¶¶ 15, 21, 30-31.

### *Professional Services Exclusion*

USAA argues that because Burka sought coverage under his professional liability policy with another insurer (MMIC) and failed, "judicial estoppel" prevents him from arguing in this lawsuit that his actions were *not* professional services under the USAA policy exclusion under its Maine Renters Policy.  Defs.' Mem. of Law at 18-19.[16]

The argument is a nonstarter.  Judicial estoppel applies where a party's inconsistent prior contention was *successful*.  See New Hampshire v. Maine, 532 U.S. 742, 749 (2001); Sexual Minorities Uganda v. Lively, 899 F.3d 24, 32-33 (1st Cir. 2018) ("the party must have persuaded the first tribunal to accept its earlier position"); Perry v. Blum, 629 F.3d 1, 11 (1st Cir. 2010).  I decline to apply the principle here.[17]

### *Resident Spouse Exclusion*

USAA argues that the policy excludes injuries that Cayne claims in the underlying Maine lawsuit because she was a resident spouse during the policy

---

[16] The policy excludes coverage for bodily injury "arising out of or in connection with a business engaged in by an insured."  Me. Renters Policy at Page ID # 187.  It defines "business" to include a "trade, profession or occupation."  Id. at Page ID # 194.

[17] In addition to the litigation between Burka and MMIC in the First Circuit, USAA points to a pending case in the Middle District of Tennessee, Burka v. Vanderbilt Univ. Med. Ctr., No. 3:19-cv-00113, between Burka and another insurer.  Defs.' Mem. of Law at 18.  The existence of that pending case does not change my analysis.

period.  Defs.' Mem. of Law at 15-18.[18]  The policy excludes coverage for "bodily injury to you or an insured."  Me. Renters Policy at Page ID # 211.  The definition of "insured" does not mention a spouse, but elsewhere the policy defines a resident spouse as an insured, stating "'You' and 'your' mean the person named on the Declarations Page.  We also mean your spouse when a resident of your household."  Id. at Page ID # 194.  It does not define the meaning of "resident" as used in that context.

In Commercial Union Insurance Co. v. Alves, 677 A.2d 70 (Me. 1996), the Law Court analyzed a policy with nearly identical language and concluded that the exclusion applied.  However, in that case the Court observed that it was "undisputed" that the couple was "married and resided in the same household at the time" that one caused the other's injuries.  Id. at 72.  Here, it is undisputed that Cayne and Burka were married during the policy period.  But the record does *not* establish that Cayne was a "resident of [Burka's] household" for the entire period.  Instead, the Complaints in the underlying litigation say that Cayne decided to end the marriage in April 2015; moved out of the marital home around early May to live in Maryland for a brief period; returned to Maine in mid-May but did not return to the marital home, instead living in a hotel while attempting to complete her teaching year; and ultimately left Maine "for good" before the end of the school year.  Md. Am. Compl. ¶ 11; Me. First Am. Compl. ¶¶ 15, 17.  If Cayne was not a resident of the marital household in the final months of the policy period up to July 2, 2015, then there are allegations by Cayne against

---

[18] It concedes that this exclusion does not apply to the claims brought by Cayne's parents in the Maryland Complaint.  Defs.' Mem. of Law at 17-18.

Burka in both the Maine and Maryland Complaints for which the alleged harm could have occurred during the policy period but while she was no longer a resident.[19]  The allegations of the underlying complaint do not clearly fall entirely within the policy exclusion.  <u>Mitchell</u>, 2011 ME 133, ¶ 13, 36 A.3d 876.  The resident spouse exclusion does not excuse USAA's duty to defend.[20]

***Termination of the Duty to Defend***

The parties do not suggest that there were any developments in the Maryland litigation between the filing of the Complaint and Amended Complaint and settlement of that lawsuit.  Any issue about termination of the duty to defend pertains only to the Maine lawsuit.

The Maine Renters Policy does not address when, if ever, the duty to defend terminates.  It says only that if there is coverage, USAA will "provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . .  Our duty to settle or defend ends when the amount we pay or

---

[19] USAA effectively concedes that at least some of the alleged conduct occurred while the couple did not reside together.  <u>See</u> Defs.' Mem. of Law at 16 (Cayne was residing in Maine with Burka "throughout *most* of the applicable policy period.  Furthermore, the *vast majority* of the alleged wrongful conduct occurred while the couple resided together." (emphasis added)).

[20] USAA argues it has no duty to defend because, during the underlying litigation, Burka violated the policy requirements by failing to inform it of events and concealing or misrepresenting material facts, namely that certain claims were dismissed.  <u>See</u> Defs.' Obj. at 2, 5-6, 8-9.  But USAA furnishes no authority for concluding that the insured's duty to inform continued *after* the insurer improperly denied a defense to the insured, nor, given its decision not to defend, any explanation of how the asserted failure to inform prejudiced it in defending the underlying legal actions.  <u>See</u> Restatement of Liab. Ins. §§ 30, 34.  The First Circuit has said:

> Under Maine law, a failure to give notice will only excuse an insurer if the insurer—who bears the burden—can show that it was prejudiced by the lack of notice.  The ordinary showing of prejudice is a showing by the insurer of a possible defense against liability in the original action against its insured and a further showing that the delay in notice impaired its ability to assert that defense.

<u>Franco v. Selective Ins. Co.</u>, 184 F.3d 4, 7-8 (1st Cir. 1999) (Maine case citations omitted).

tender for damages resulting from an occurrence equals our limit of liability." Me. Renters Policy at Page ID # 187.[21]

The Maine Law Court has not addressed when a duty to defend terminates. But the recent Restatement of Liability Insurance does so in section 18.[22] It states in relevant part that a duty to defend terminates upon *final* adjudication or settlement of the insurable part of the underlying lawsuit or settlement. Moreover, "Adjudication eliminating the covered cause from the action, so that the only remaining cause of action is not covered, ends the insurer's duty to defend the action, *provided that the time for taking an appeal from that adjudication has expired, any appeals have been resolved, or the claimant has relinquished its appeal rights.*" Restatement of Liab. Ins. § 18 cmt. d (Am. Law Inst. 2019) (emphasis added).[23]

---

[21] Two courts in other jurisdictions have ruled that similar policy language regarding a duty to defend was ambiguous and therefore must be construed in favor of the insured to require the insurer to continue to defend beyond a partial resolution. Anderson v. Kayser Ford, Inc., 925 N.W.2d 547, 553, 560-61 (Wis. Ct. App. 2019) (where policy provided only that insurer had "the right and duty to defend any 'suit' asking for . . . damages," concluding that "a reasonable insured would not have a clear understanding of whether there is a duty to defend based on the policy language alone" and construing doubt in favor of insured); City of Sandusky, Ohio v. Coregis Ins. Co., 192 F. App'x 355, 362 (6th Cir. 2006) (applying Ohio law and concluding that the phrase "defend or be associated with the defense" was ambiguous as to termination of the duty and in the absence of clear language permitting withdrawal "it was the reasonable expectation of the insured that [the insurer] would maintain its defense at least through a final judgment" and construing language in favor of the insured).

[22] Restatement of Liab. Ins. § 18: "An insurer's duty to defend a legal action terminates only upon the occurrence of one or more of the following events: . . . (3) Final adjudication or dismissal of parts of the action that eliminates any basis for coverage of any remaining parts of the action; (4) Settlement of the action that fully and finally resolves the entire action . . . ."

[23] The ALI Reporter's notes cite relevant cases that support the Restatement's position. Couch on Insurance §§ 200:49-50 agrees. My colleague Judge Singal reached a contrary conclusion—that a trial court dismissal ends the duty to defend before appeal rights are exhausted—in Med. Mut. Ins. Co. of Me. v. Burka, 2017 WL 1743505, *6 (D. Me. May 3, 2017), but he did not have the benefit of the later Restatement analysis and he based his conclusion on Massachusetts law as interpreted in Conway Chevrolet-Buick, Inc. v. Travelers Indemnity Co., 136 F.3d 210, 213-15 (1st Cir. 1998). Conway did say that a duty to defend expired with the grant of partial summary judgment on a covered claim, but it did not address the appeal issue.

The Maryland statutory claim for improper access to medical records and the Maryland invasion of privacy claim continued until the global resolution in 2017. The Maine invasion of privacy claim was dismissed on September 22, 2016, but that was not a final judgment and therefore not appealable. The Maine court docket is sealed, and I do not have access to the specifics of what happened thereafter except that there was eventually an appeal.[24] I therefore cannot rule on the issue of termination of coverage for the Maine lawsuit. Moreover, Burka contends this issue was never contemplated by the parties as part of the cross-motion summary judgment practice,[25] Pl.'s Resp. to Procedural Order at 2-4 (ECF No. 43), and the record before the Magistrate Judge supports that contention. See Joint Proposed Am. Scheduling Order (ECF No. 19), granted (ECF No. 20).

I leave it to the Magistrate Judge to determine what discovery to allow on this issue about the underlying Maine lawsuit and whether he must direct the plaintiff to reveal the sealed state lawsuit docket.

### Reasonableness and Relatedness of Fees

The last question the parties posed for summary judgment is: "in the event that a duty to defend was owed, must the plaintiff prove the relatedness and

---

[24] I need not determine whether a Maine Superior Court Justice would have had such access if USAA had not removed the case to this Court. See Wells Fargo Bank, N.A. v. Bump, 2021 ME 2, ¶¶ 21-23, ___A.3d ___, for a recent discussion of the scope of Maine's judicial notice rule.

[25] Burka's Reply to Defendants' Additional Facts at 1-2 (ECF No. 39) says:

> The Defendants now appear to be contending that they owed a duty to defend initially based on the allegations in the Amended Complaints, and then did not when certain claims were dismissed. That is not a position that was asserted in their original filing, nor was it anticipated in discussion with the Court. The Defendants' initial assertion was that it never owed Dr. Burka a defense. The new and additional issues raised by this filing should be disregarded.

See also id. at 6 ¶ 10 ("how long USAA's duty to defend lasted [is] an issue that was not to be addressed during this phase of the litigation").

reasonableness of the legal expenses incurred during the underlying litigation such that he must produce discovery in support of same." (ECF Nos. 19, 20).

The answer is yes, with some qualifications. The parties agree that Burka has the burden of proving the relatedness and reasonableness of the fees and costs he incurred in the underlying lawsuits. Defs.' Obj. at 15-17; see Liberty Mut. Ins. Co. v. Cont'l Cas. Co., 771 F.2d 579, 582 (1st Cir. 1985) (applying insurance treatises and Massachusetts law); Pl.'s Mot. for Summ. J. at 22. The real dispute is whether USAA, having breached its duty to defend, can seek full discovery of the underlying litigation files and directly challenge the fees on all bases. I conclude that USAA certainly is entitled to discovery regarding relatedness—*i.e.* to ensure that the billing is not for Burka's divorce, his counterclaims, nor defense of his father in the Maryland lawsuit. But what is it entitled to discover and then to argue regarding the reasonableness of the rates, timekeeping and duplication, strategic choices made in defending the underlying lawsuits, etc.?

As a general principle, the Law Court has said that wrongful refusal of a duty to defend constitutes a breach of contract and that damages should "place the insured in a position equally as good as the insured would have occupied had the insurance contract been fully and properly performed from the beginning." Harlor, 2016 ME 161, ¶ 21, 150 A.3d 793 (quotation marks omitted). That statement implies an insurer's responsibility for all the fees the insured incurred as a result of the insurer's wrongful refusal to defend. The Law Court has also said that an insured's settlement of an insured claim where the insurer wrongfully refused to defend, "is presumptively reasonable" and that "the insurer

has the burden of proving that the settlement is unreasonable or in bad faith." Cambridge Mut. Fire Ins., Co. v. Perry, 1997 ME 94, ¶ 11, 692 A.2d 1388.  But it has not squarely addressed the issue of attorney fees, as posed here, nor has the First Circuit.

Both the District of Rhode Island and the Northern District of Texas have adopted in part the Seventh Circuit's reasoning in Taco Bell Corp. v. Continental Casualty Co., 388 F.3d 1069 (7th Cir. 2004).  The Seventh Circuit observed that where an insurer wrongfully denied a duty to defend, "[b]ecause of the resulting uncertainty about reimbursement, [the insured] had an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review." Id. at 1075-76.  The court said that in refusing its duty to defend, the insurer forfeited its right to control the defense, "gambling that it would be exonerated from a duty to defend—with the result that [the insured] selected the lawyers." Id. at 1076.  The court reasoned that "the duty to defend would be significantly undermined if an insurance company could, by the facile expedient of hiring an audit firm to pick apart a law firm's billing, obtain an evidentiary hearing on how much of the insured's defense costs it had to reimburse."  Id. at 1077.  In discussing Taco Bell, the District of Rhode Island has said that the "general rule" is that "the initial burden is on the insured to prove that its fees were reasonable," Emhart Indus., Inc. v. Home Ins. Co., 515 F. Supp. 2d 228, 251 (D.R.I. 2007) (citing Liberty Mut. Ins. Co., 771 F.2d at 582), but that "[a]n insurer's ability to contest . . . is somewhat diminished (although not entirely eradicated).  For example, second guessing an insured's tactical decisions within

20

the defensive sphere is generally precluded, and uncertainties in the nature and extent of an insured's legal representation are to be resolved against the breaching insurer," id. at 252.   The Northern District of Texas agreed with Emhart and concluded that the Texas Supreme Court would "decide that an insurer who abdicates its duty to defend is . . . barred from directly challenging the reasonableness and necessity of the insured's attorney's fees."  Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co., 904 F. Supp. 2d 592, 603-04 (N.D. Tex. 2012).

I think it likely that the Maine Law Court would follow the reasoning of Shore Chan, Emhart, and Taco Bell in reducing but not eradicating the insurer's ability to challenge the fees.[26]  But none of those cases dealt with discovery, and I am unable to make the blanket discovery determination that Burka seeks.  I leave it to the Magistrate Judge's discretion to determine what is reasonable discovery for the issues that remain.

## CONCLUSION

I **DENY** summary judgment to USAA and **GRANT** summary judgment to Burka as to liability on the Count I claim of contractual breach of the duty to defend.  The Magistrate Judge shall review counsel's proposals and determine what discovery is appropriate on (1) the remaining counts in this lawsuit,[27] (2) the termination of USAA's duty to defend the Maine lawsuit (including

---

[26] In Taco Bell, the Seventh Circuit said the decision whether to hold an evidentiary hearing on attorney fees was a procedural (rather than substantive) matter and concluded that federal law therefore governed under the Erie doctrine.  388 F.3d 1069, 1076 (7th Cir. 2004).

[27] The other counts in Burka's Complaint (ECF No. 1-1) involve Maine statutes governing late payment and unfair claims settlement practices.  See 24-A M.R.S. §§ 2436 (Count II), 2436-A (Count III).

whether Burka must disclose more information to USAA about the sealed docket in the Maine lawsuit) before settlement, and (3) the reasonableness and relatedness of Burka's claimed fees and costs.

**So Ordered.**

**Dated this 22ND day of February, 2021**

/s/D. Brock Hornby

**D. Brock Hornby**
**United States District Judge**

**Appendix A**

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1.  pay up to our limit of liability for the damages for which the insured is legally liable; and

2.  provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay or tender for damages resulting from an occurrence equals our limit of liability.  This coverage does not provide defense to any insured for criminal prosecution or proceedings.

Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a.  bodily injury; or

b.  property damage.

We will not pay for punitive damages or exemplary damages, fines or penalties.

Me. Renters Policy at Page ID # 187 (ECF No. 27-5).

*****

To help you understand your Policy:

-"We", "us", and "our" mean the company providing this insurance.

-"You" and "your" mean the person named on the Declarations Page.  We also mean your spouse when a resident of your household.

In addition, certain words and phrases are defined as follows:

. . . .

2.  "bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3.  "business" includes trade, profession or occupation.

i

4. "insured" means you and residents of your household who are:

> a. your relatives; or
>
> b. other persons under the age of 21 and in the care of any person named above.

. . . .

Me. Renters Policy at Page ID # 194.

*****

1. LIABILITY and MEDICAL PAYMENTS TO OTHERS do not apply to bodily injury or property damage:

> a. which is expected or intended by the insured;

. . . .

2. LIABILITY does not apply to:

. . . .

> f. bodily injury to you or an insured within the meaning of part a or b of the definition of "insured".

Me. Renters Policy at Page ID ## 208-11.

*****

Item 1.b. is deleted and replaced by:

b. 1. arising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business;

. . . .

Under 1. the following exclusions are added:

. . . .

4. arising out of the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

Under 2. the following exclusion is added:

1. punitive or exemplary damages, fines, or penalties.

Me. Renters Policy at Page ID ## 187-89.

ii